UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TYRELL SIMMS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:20cv1719 (KAD) |
| | : | |
| CAPTAIN DURANT, et al., | : | |
|     Defendants. | : | |

## <u>INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A</u>

The plaintiff, Tyrell Simms, a pretrial detainee[1] in the custody of the Connecticut Department of Correction ("DOC"), proceeding *pro se* and *in forma pauperis,* brings this civil rights action pursuant to 42 U.S.C. § 1983, against Captain Durant, Correction Officer Grady, AP Officer Pisano, Lieutenant Finnucan, and Lieutenant Maranda (or Miranda)[2] for alleged violations of his Fourteenth Amendment rights. Specifically, he alleges, *inter alia,* that the defendants, all DOC employees, failed to protect him from an assault by another inmate while he was incarcerated at Bridgeport Correctional Center ("BCC") on June 6, 2019.[3] ECF No. 1. He seeks money damages. *Id.* at 4.

For the following reasons, all claims are dismissed without prejudice except for Simms's

---

[1]  The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website shows that Simms is held on bond with a latest admission date of November 4, 2019. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=393373.

[2]Simms spelled this defendant's named in both ways. The Court will refer to this defendant as Lieutenant Miranda.

[3]  The Connecticut Judicial website (https://www.jud2.ct.gov) shows that Simms was arrested in a case bearing docket number N23N-CR19-0330642-T on May 9, 2019 for an offense that occurred on that same date. He was sentenced under this docket number on August 1, 2019.   Simms was also arrested in a case bearing docket number S20N-CR19-0147887-S on January 16, 2019 for an offense that occurred on October 22, 2018. He was sentenced under this docket number on August 14, 2019. The Connecticut Judicial Department website does not reflect any convictions for which Simms was incarcerated on June 6, 2019. Accordingly, the Court reviews the claims herein under standards applicable to a pretrial detainee as opposed to a sentenced prisoner.

Fourteenth Amendment claim against Correction Officer Grady.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**ALLEGATIONS**

The Court considers all of Simms's allegations to be true for purposes of this assessment.

2

While housed at BCC on June 6, 2019, Simms was on pending Security Risk Group ("SRG") status in the Restrictive Housing Unit (RHU). ECF No. 1 at ¶ 13. He was escorted while handcuffed behind his back into the Admitting and Processing Room ("AP Room") because he needed to go to court in the morning. *Id.* He was brought into the room where other inmates were roaming the area without restraints. *Id.*

Correction Officer Grady opened the SRG "bullpen" which was holding two SRG inmates from Corrigan. *Id.* After Simms turned around to ask Correction Officer Grady to remove his restraints, Simms was assaulted by an inmate whom Correction Officer Grady had let out of the bullpen. *Id.*

Later, Lieutenant Miranda took a picture of Simms's face. *Id.* Lieutenant Miranda informed Simms that he had been assaulted while he was handcuffed and that he did not fall. *Id.* Correction Pisano was also in the room during the incident. *Id.*

Simms alleges that if he had not been on pending SRG status, he would have been placed in the general population bullpen without being handcuffed behind his back and he could have protected himself. *Id.*

## DISCUSSION

Simms asserts violation of his Fourteenth Amendment rights based on Defendants' deliberate indifference to safety when they failed to protect him from assault as well as their failure to follow certain Administrative Directives. He asserts a violation of his Fourth Amendment rights arising out of excessive and purposeless strip searches. Claims of pretrial detainees involving deliberate indifference to unsafe conditions of confinement are considered under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*,

849 F.3d 17, 29-34 & n.9 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017).

**Fourteenth Amendment**

To plausibly allege a due process claim under the Fourteenth Amendment for deliberate indifference to health and safety, a plaintiff must allege facts which satisfy two prongs: (1) an "objective prong" showing that the plaintiff's condition of confinement posed an unreasonable risk of serious harm to the plaintiff, and (2) a "*mens rea* prong" showing that the state actor's conduct amounts to deliberate indifference to that objectively serious risk of harm. *See Darnell*, 849 F. 3d at 29; *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019).

Under the objective prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health ... which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted). A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and considers, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter medical care, and reasonable safety, or has been subjected to an unreasonable risk of serious harm to his or her future health. *Id.* (internal quotation marks and citations omitted).

Relevant to the *mens rea* element, "deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles*, 925 F.3d at 86 (citing *Darnell*, 849 F.3d at 33–34). Under the *mens rea* prong, a pretrial detainee must allege

4

"that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. At the same time, "negligence … does not, without more, engender a constitutional claim." *Sanders v. Laplante*, No. 3:19-CV-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019); *see also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence.").

Placing restraints on an inmate does not violate the constitution unless the placement is totally without penological justification, grossly disproportionate, or involves the unnecessary or wanton infliction of pain. *Delgado v. Bezio,* No. 09 Civ. 6899, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011). Here, Simms pending SRG status defeats any claim that the decision to handcuff him behind his back was without penological justification. And Simms does not allege that the use of handcuffs involved any infliction of pain, let alone unnecessary or wanton infliction of pain. He merely asserts that he was unable to protect himself from the assault due to being handcuffed.   While this may be true, it does not arise to the level of a Fourteenth Amendment violation under the circumstances alleged here.

However, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Simms's allegations raise a Fourteenth Amendment claim based on his being subjected to an unsafe condition of confinement that resulted in his assault by another inmate. *Wine v. Chapdelaine*, No. 3:18-CV-704 (VAB), 2020 WL 4059845, at *7 (D. Conn. July 19, 2020) (plaintiff's allegations that he

was subjected him to a risk of serious injury by permitting him to remain housed with inmates

who had threatened to physically harm him satisfied objective element); *Perez v. Ponte*, 236 F.

Supp. 3d 590, 626–27 (E.D.N.Y. 2017), *report and recommendation adopted*, No. 16-cv-645

(JFB) (AKT), 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017) (pretrial detainee stated

plausible failure-to-protect claim against correctional officers under Fourteenth Amendment by

alleging that unidentified inmate approached him from behind and slashed his face from his ear

down to his chin, requiring surgery and causing permanent nerve damage and headaches, and

that officers directly observed the attack, did nothing to intervene, and had enough time to flee to

their office in the recreation yard).   Other than the decision to handcuff him behind his back,

(which is not actionable), the Complaint contains very little by way of allegations from which it

might be inferred that Officer Grady knew or should have known that the other inmate posed a

threat to Simms and then intentionally or recklessly disregarded the risk of harm to Simms

implicated by this threat. However, for initial review purposes only, the court concludes that

Simms's allegations are sufficient to plausibly allege this claim. The SRG designation itself

bespeaks the potential for violence between persons so designated; the assaulting inmate was an

SRG member and was unrestrained; the assaulting inmate was released from the bullpen which

allowed him to carry out the assault; and Simms was vulnerable to assault because he was

handcuffed. Accordingly, the court will permit this Fourteenth Amendment claim to proceed

against Correction Officer Grady.

    Simms also asserts that Officer Pisano, who he alleges was present at the time of the

assault, acted with indifference to his safety in violation of the Fourteenth Amendment. An

officer's failure to intervene is a Fourteenth Amendment violation where the officer acted with

deliberate indifference to a substantial risk of serious harm to an inmate. *Rosen v. City of N.Y.*, 667 F. Supp. 2d 355, 359–60 (S.D.N.Y. 2009). "In the context of a failure to intervene claim, an officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate without risk to himself, yet fails to intervene." *Id.* at 360. Simms has only alleged that Officer Pisano was in the room at the time, but there are no allegations to suggest that he had the opportunity to assess and respond to the imminent threat to prevent or stop the assault on Simms. The Complaint fails to state a claim for relief against Officer Pisano and the Fourteenth Amendment claim against Officer Pisano is DISMISSED.

Simms also alleges that Lieutenant Miranda took a picture of his face after the attack and informed him that he had not fallen, but he fails to allege that Lieutenant Miranda had any other involvement with the incident on June 6, 2019. Compl. at 3, ¶ 13. Likewise, he has not alleged facts to indicate the involvement of Captain Durant or Lieutenant Finnucan in the incident on June 6, 2019, except that that they are allegedly responsible for his placement on SRG status. *Id.* Simms asserts that if he had been in the population bull pen, he would not have been handcuffed behind his back. *Id.*

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do

the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). The Second Circuit has recently underscored a plaintiff must allege "'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 2020 WL 7687688, at *6 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

Here, there are simply no allegations that Defendants Miranda, Durant or Finnucan had any personal involvement in the purported constitutional deprivation. Accordingly, Simms has failed to raise plausible Fourteenth Amendment claims against Defendants Miranda, Finnucan and Durant and those claims are DISMISSED.

### Administrative Directives

Simms alleges that the defendants violated his Fourteenth Amendment rights by not following certain of the DOC Administrative Directives. However, the defendants' failure to comply with prison regulations or administrative directives does not constitute a basis for relief under Section 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted). These claims are DISMISSED.

### Fourth Amendment

Simms asserts that all defendants violated his Fourth Amendment rights by subjecting him to excessive and purposeless strip searches and by placing him in a restrictive environment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"[I]nmates retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 62 (2d Cir. 2016).

Simms has not alleged any facts indicating that he was subjected to unreasonable strip searches by these defendants so as to raise plausible Fourth Amendment claims against them. To the extent he asserts claims concerning his restrictive conditions of confinement, such claims are considered under the Fourteenth Amendment, not the Fourth Amendment. *See Darnell*, 849 F.3d at 29 ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment[.]"). Accordingly, Simms's Fourth Amendment claims are not plausibly alleged and are DISMISSED.

**ORDERS**

The Court enters the following orders:

(1) The case shall proceed on Simms's individual capacity claim of Fourteenth Amendment violation based on Correction Officer Grady's alleged deliberate indifference to inmate safety arising out of the inmate assault on Simms. All other claims are DISMISSED without prejudice.

(2) The clerk shall verify the current work address Correction Officer Grady with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to him at his confirmed addresses on or before **February 16, 2021**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on Defendant, and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

9

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs as well as to the Office of the Attorney General.

(4) Defendant shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If Defendant chooses to file an answer, Defendant shall admit or deny the allegations and respond to the cognizable claims recited above. Defendant may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **July 26, 2021**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by August 26, 2021.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of

10

change of address. He should also notify Defendant or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** this 26th day of January 2021 at Bridgeport, Connecticut.

\_\_\_\_\_/s/_____
Kari A. Dooley
United States District Judge

11