## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
TYRELL SIMMS                  :     Civ. No. 3:20CV01719(SALM)
                              :
v.                            :
                              :
CORRECTION OFFICER GRADY      :     April 12, 2022
                              :
------------------------------x
```

**<u>RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. #32]</u>**

Plaintiff Tyrell Simms, a pretrial detainee currently housed at Corrigan Correctional Center ("Corrigan") in the custody of the Connecticut Department of Correction ("DOC"),[1] brings this action as a self-represented party pursuant to 42 U.S.C. §1983, alleging that defendant Correction Officer Grady ("Grady") was deliberately indifferent to his safety, and wrongfully failed to protect Simms from an assault by another inmate, in violation of the Fourteenth Amendment to the United

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Simms entered DOC custody on November 4, 2019, and is unsentenced. See Connecticut State Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=385314 (last visited Apr. 12, 2022).

States Constitution.[2] Grady is a current or former employee of the DOC, who worked, at the relevant time, or thereafter, at Bridgeport Correctional Center ("BCC"). See Doc. #11 at 3.

Pursuant to Federal Rule of Civil Procedure 56(a), Grady moves for summary judgment on plaintiff's sole remaining claim. See Doc. #32. Plaintiff has not submitted any evidence in response to defendant's motion. For the reasons set forth below, defendant's motion for summary judgment [**Doc. #32**] is **GRANTED**.

## I.   BACKGROUND

Plaintiff filed his Complaint on November 17, 2020, naming five defendants. See Doc. #1 at 2. The Complaint is not signed; however, it includes the following statement:

> By signing this complaint I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of knowledge I understand that if I lie in this complaint I may be prosecuted for perjury and punished with as much as five years in prison or a fine of $250,000.00 See 18 U.S.C. §1621, 3571.

Id. at 4 (sic).

Plaintiff's complaint contains the conclusory assertion: "The Plaintiff exhausted his administrative remedies before filing this complaint." Id. at 2. No specific factual

---

[2] The Complaint originally included additional claims and defendants, but all other claims were dismissed on initial review. See Doc. #11 at 9. Plaintiff elected not to file an Amended Complaint to attempt to state a claim as to any of the dismissed counts or defendants.

allegations regarding exhaustion are made in the Complaint.

On initial review, the Court dismissed all claims other than "Simms's individual capacity claim of Fourteenth Amendment violation based on Correction Officer Grady's alleged deliberate indifference to inmate safety arising out of the inmate assault on Simms." Doc. #11 at 9. This is the sole claim on which the matter has proceeded. Plaintiff alleges that on June 6, 2019, Grady released an unrestrained inmate from the bullpen, giving him access to plaintiff, while plaintiff was handcuffed behind his back. See id. at 6. The other inmate assaulted Simms, who was unable to defend himself due to being cuffed behind the back. See id.

On December 29, 2021, defendant filed a motion seeking leave to file a summary judgment motion limited to the question of exhaustion. See Doc. #30. The Court granted that motion, ordering defendant to file his motion on or before January 7, 2022, and setting the deadline for plaintiff to respond as **February 4, 2022**. See Doc. #31. Defendant filed his motion for summary judgment on January 7, 2022, as expected. See Doc. #32. Defendant asserts that plaintiff failed to exhaust his available administrative remedies before filing the instant action. Specifically, defendant contends that "plaintiff failed to fully, properly follow" the required procedures, and instead "filed a Level-1 Grievance and a Level-2 Appeal that were

untimely by several months." Doc. #32-1 at 6.

On February 1, 2022, the Court entered a separate Order on the docket expressly resetting the deadline for plaintiff's response to the previously set date of February 4, 2022. See Doc. #35. On February 7, 2022, when no response had been received from plaintiff, the Court entered the following Order:

> ORDER. Plaintiff's response to defendant's [32] Motion for Summary Judgment was due by February 4, 2022. See Doc. #31. Plaintiff has not filed any response to that motion.
>
> The Court hereby sua sponte extends plaintiff's response deadline to **February 25, 2022**. If plaintiff fails to file a response to defendant's [32] Motion for Summary Judgment, including defendant's Local Rule 56(a)(1) statement (Doc. #33), the Court will accept any facts asserted by defendant that are supported by competent evidence as undisputed when addressing the Motion for Summary Judgment. See Doc. #34 at 1-3; D. Conn. L. Civ. R. 56(a)(1).

Doc. #36. On that same date, the Court again separately reset the deadline for plaintiff's response to February 25, 2022. See Doc. #37. Each of the referenced Court Orders was delivered to plaintiff through the Prisoner E-Filing program, at Corrigan.

As required by the Local Rules, defendant filed a "Notice to Self-Represented Litigant Concerning Motion for Summary Judgment" with his motion. See Doc. #34. That Notice was mailed to plaintiff at Corrigan. See id. at 4. The Notice warns plaintiff: "THE MOTION MAY BE GRANTED AND YOUR CLAIMS MAY BE DISMISSED WITHOUT FURTHER NOTICE IF YOU DO NOT FILE PAPERS AS

REQUIRED BY RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND RULE 56 OF THE LOCAL RULES OF CIVIL PROCEDURE, AND IF THE MOTION SHOWS THAT THE MOVANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW." Id. at 1.

On February 22, 2022, the Court received a document from Mr. Simms addressed to the Clerk's Office in Bridgeport. See Doc. #38. The document is one-page, handwritten, bears no caption or case number, and is simply headed: "Response to Summary Judgment[.]" Id. at 1. It was docketed by the Clerk's Office in Simms v. Cuzio, 3:21CV00492(SALM). Upon review of the document, the Court determined that it may be intended to relate to this case, and ordered it filed in this case on April 4, 2022. The document reads, in its entirety, as follows:

> Hey my name is Tyrell Simms & I'm currently incarcerated at Corrigan C.I. I just received the summary for judgment paperwork. I filed grievances until my remedies were exhausted. I was assaulted while in restraints by another inmate in D.O.C. custody on June 6th 2019 I was in restricted housing for weeks until I was transported to Walker C.I. I filed a level-1 grievance while at B.C.C. in RHU & handed the grievance on camera to Lt. Finnucan I went home form my incarceration on September 6th 2019. When I came back to prison I filed grievances on the assault from June 6th once my remedies were exhausted (rejected) I filed my complaint. Now at the time of the assault I didn't know that I could sue the D.O.C. for failing to protect me (neglect) Anyway I was informed that you have 2-3 years to file a lawsuit before the deadline is up. I would like for this matter to be taken as serious as if it were your child who was assaulted by a gang member. The D.O.C. officers were in the wrong & instead of apologizing or admitting that it was an honest mistake their saying I filed my law suit late. I just want justice.

<u>Id.</u> at 1 (sic). This is the only response plaintiff has filed to the motion for summary judgment. He has not produced any evidence, nor has he responded in any way to defendant's Statement of Material Facts.

## II.   <u>**LEGAL STANDARD**</u>

> The standards governing summary judgment are well-settled. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)[.]

<u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002). Summary judgment is proper if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (alterations added).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." <u>Marvel Characters</u>, 310 F.3d at 286. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

"Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule[.]" D. Conn. L. Civ. R. 56(a)(1). Where the non-moving party does not adequately oppose a motion for summary judgment, including by failing to respond to the Statement of Material Facts, "the Court accepts as true all factual allegations in the admissible materials accompanying the motion for summary judgment, see Fed. R. Civ. P. 56(e), and assesses only whether any genuine issue of material fact remains for trial on the summary judgment record as it stands." Ortiz v. Santora, 223 F. Supp. 2d 387, 393 (D. Conn. 2002).

"It is true that a verified complaint may serve as an affidavit for summary judgment purposes provided it meets the other requirements for an affidavit under Rule 56(e)." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 292 (2d Cir. 2000). However, if the statements in such a complaint are speculative and unsupported, they are insufficient to defeat a motion for summary judgment. See Curtis v. Cenlar FSB, 654 F. App'x 17, 20 (2d Cir. 2016). Parties who choose to ignore their obligations at summary judgment under the Local Rules "do so at their own peril." Genova v. Cty. of Nassau, 851 F. App'x 241, 244 (2d Cir. 2021).

## III. DISCUSSION: Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") "requires an inmate to exhaust" all available administrative remedies before bringing a civil suit "with respect to prison conditions." Medina v. Somers, No. 3:10CV00299(JBA), 2011 WL 2844301, at *2 (D. Conn. July 14, 2011) (citation and quotation marks omitted).[3] "The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, regardless of whether the inmate may

---

[3] The Court notes that where the term "inmate" is used in the exhaustion context, it applies equally to pretrial detainees. See, e.g., Dickinson v. York, 828 F. App'x 780, 782 (2d Cir. 2020) (finding that pretrial detainee was required to exhaust administrative remedies under PLRA); Ruggiero v. Cnty. of Orange, 467 F.3d 170, 173 (2d Cir. 2006) (same).

obtain the specific relief he desires through the administrative

process." Medina, 2011 WL 2844301, at *2.

> A claim is not exhausted until the inmate complies with
> all administrative deadlines and procedures. See
> Woodford v. Ngo, 548 U.S. 81, 90 (2006). Informal efforts
> to put prison officials on notice of inmate concerns do
> not satisfy the exhaustion requirement. See Macias v.
> Zenk, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to
> file a grievance about an issue has passed, claims
> concerning that issue are unexhausted and barred from
> federal court. See Woodford, 548 U.S. at 94-95. In
> addition, the inmate must exhaust his administrative
> remedies for each claim he asserts in federal court. See
> Baldwin v. Arnone, No. 3:12CV00243(JCH), 2013 WL 628660,
> at *5 (D. Conn. Feb. 18, 2013).

Jones v. Johnson, No. 3:15CV01135(DJS), 2017 WL 1843692, at *3

(D. Conn. May 8, 2017).

Exhaustion is required, under the PLRA, for claims relating

to conditions of confinement. See Taylor v. N.Y. City Dep't of

Corr., 849 F. App'x 5, 9 (2d Cir. 2021) ("Since the conditions-

of-confinement and access-to-courts claims were grievable, and

therefore subject to the IGRP appeals process, Taylor's failure

to appeal the non-responses to these grievances constituted a

failure to exhaust his administrative remedies."). The

exhaustion requirement applies to claims of deliberate

indifference to an inmate or detainee's safety, such as Simms

brings here. See, e.g., Durham v. Hanna, No. 3:19CV00190(KAD),

2020 WL 4586688, at *6 (D. Conn. Aug. 10, 2020) (granting

summary judgment on exhaustion grounds as to claim of

"deliberate indifference to [plaintiff's] safety"); Garcia v.

<u>Univ. of Conn. Health Care Ctr.</u>, No. 3:16CV00852(JCH), 2018 WL 5830840, at *8 (D. Conn. Nov. 7, 2018) (granting summary judgment based on "failure to exhaust as to the claim that Hurdle acted with deliberate indifference to Garcia's health and safety, and subjected him to unconstitutional conditions of confinement[]").

Defendant Grady moves for summary judgment on the ground that plaintiff did not exhaust his administrative remedies.

DOC has adopted Administrative Directives ("AD") governing the process by which an inmate or pretrial detainee may "seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." Doc. #32-2 at 1. Specifically, AD 9.6, "Inmate Administrative Remedies," sets out the process for seeking such review. <u>Id.</u> "All matters subject to the Commissioner's authority for which another remedy is not provided are grievable[]" under the provisions of AD 9.6. <u>Id.</u> at 5.

"AD 9.6 requires an aggrieved inmate to first seek informal resolution of his issues, in writing, through the use of an Inmate Request Form prior to filing a formal grievance[.]" Doc. #33 at 2, ¶6 (footnote omitted). "Next the inmate must file a grievance and attach the Inmate Request Form containing the appropriate staff member's response, among other requirements." <u>Id.</u> at 2, ¶7. "The [Level-1] grievance must be filed within 30

calendar days of the occurrence or discovery of the cause of the grievance." Doc. #32-2 at 6.

"Following the Level-1 Grievance, the inmate must file a Level-2 Appeal either 1) within 5 days from the response to the Level-1 Grievance, or 2) within 65 days of the filing of the Level-1 Grievance if no response to that grievance is received." Doc. #33 at 2, ¶8; see also Doc. #32-2 at 7-8. In certain limited circumstances, an "inmate may appeal a Level 2 disposition to Level 3 within five (5) calendar days of receipt of the disposition[.]" Doc. #32-2 at 7.

The incident underlying the Complaint in this case took place on June 6, 2019. See Doc. #1 at 2. Defendant asserts as a material fact: "Plaintiff did not timely submit any Level-1 Grievances with the Connecticut Department of Correction concerning defendant Grady's alleged June 6, 2019 conduct." Doc. #33 at 3, ¶9. This assertion is considered admitted, due to plaintiff's failure to respond to it.

The record contains a Level-1 grievance filed by plaintiff relating to the assault; it is dated November 30, 2019, and was received by DOC officials on December 10, 2019. See Doc. #32-4 at 3. That grievance asserts that Simms had submitted an Inmate Request Form CN 9601 as required, but that he had not received any response "within 15 business days[.]" Id. The grievance describes the June 6, 2019, incident, but makes no claim that

Simms had filed a prior Level-1 grievance about the incident. This grievance was rejected as untimely. See id. Plaintiff filed a Level-2 grievance appeal of this rejection on December 17, 2019, arguing that he had submitted "a grievance 2 weeks after the assault took place and I never got a response, plus I was transferred to a different facility and still didn't get a response. I ended up going home from my case." Id. at 2.

At his deposition, plaintiff reiterated his claim that he had filed a grievance relating to the June 6, 2019, incident "two weeks after the assault took place" but never received a response. Doc. #32-5 at 96. He conceded, however, that the only Level-2 grievance appeal he had filed was the December 17, 2019 appeal. See id. at 103. Plaintiff's one-page response to the summary judgment motion likewise asserts that he "filed a level-1 grievance while at B.C.C." Doc. #38 at 1. It does not, however, assert that he ever appealed that grievance.

Construing the facts in the light most favorable to the non-moving party, the Court will assume for purposes of this ruling that plaintiff did in fact file a Level-1 grievance within 30 days of the June 6, 2019, incident.[4] There is no

---

[4] The Court notes that the language of Simms' November 17, 2019, Level-1 grievance strongly suggests that it was, in fact, his first grievance about the incident. He states that the Inmate Request Form is not attached because he received no response to it within 15 days, but makes no claim that he in fact filed a previous formal Level-1 grievance. See Doc. #32-4 at 3. The most

suggestion in the record, however, that plaintiff ever appealed any response he may have received to that grievance. Indeed, the December 17, 2019, appeal form and plaintiff's deposition testimony both indicate that plaintiff does not claim to have appealed the purported June 2019 grievance. Rather, plaintiff's statements indicate that he contends that he failed to pursue the grievance because he received no response, and/or that he was released from custody; instead of appealing the first purported grievance, plaintiff filed a second one, several months later. See Doc. #32-5 at 101 ("I filed two Level 1s, because the first one I – I filed, I never got a response to it and then I ended up going home.").

There is no dispute, therefore, that even if Simms filed a Level-1 grievance in June 2019, he did not appeal that grievance to Level-2, and thus did not exhaust his available administrative remedies. See Doc. #33 at 3, ¶12 ("Plaintiff did not timely submit any Level-2 Appeals with the Connecticut Department of Correction concerning defendant Grady's alleged June 6, 2019 conduct."). Plaintiff makes no argument that the administrative remedies were not available to him. In his deposition testimony, plaintiff agreed that he had not been

---

logical inference is that the November 17, 2019, Level-1 grievance was the first formal grievance he filed about the incident.

threatened or otherwise "thwarted" from pursuing his administrative remedies. Doc. #32-5 at 109. Failure to appeal the Level-1 grievance Simms claims to have filed in June 2019 is fatal to plaintiff's claim.

> A plaintiff who files a Level 1 grievance will not be found to have exhausted his remedies if "he had not pursued the available remedy of filing a 'level two grievance[.]'" Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002); see also Ben-Israel v. Diaz, No. 3:18CV01723 (VLB), 2019 WL 4738858, at *4 (D. Conn. Sept. 27, 2019) ("A grievance that is denied or rejected may be appealed to the next level. ... Thus, under the directive, plaintiff was able to appeal the rejection to Level 2 and was required to do so to complete the exhaustion process. Plaintiff failed to fully exhaust his administrative remedies before commencing this action." (citations omitted)); Morales v. Dzurenda, No. 3:07CV01220(CFD), 2009 WL 8695525, at *4 (D. Conn. Sept. 8, 2009), aff'd, 383 F. App'x 28 (2d Cir. 2010) ("Morales did not comply with the requirements of Administrative Directive 9.6 for filing a Level 2 Grievance in order to appeal the denial of the Level 1 Grievance. Thus, he did not properly exhaust his administrative remedies.").

Sanders v. Viseau, No. 3:20CV00250(SALM), 2021 WL 6197314, at *4 (D. Conn. Dec. 30, 2021).

Furthermore, the record reveals that Simms was not released from custody until September 6, 2019, a full three months after the incident. See Doc. #32-3 at 1. This gave him ample opportunity to pursue his grievances while incarcerated. Plaintiff contends that he filed this grievance while still at BCC; he was transferred away from BCC on June 21, 2019. See id. Thus, the Court will assume that plaintiff filed his grievance,

at the latest, on June 20, 2019. If plaintiff had filed a Level-1 grievance on June 20, 2019, and received no response, or a rejection, he would have been able to file a Level-2 grievance appeal to exhaust his remedies. See Doc. #32-2 at 7. Any Level-2 appeal must be filed "either 1) within 5 days from the response to the Level-1 Grievance, or 2) within 65 days of the filing of the Level-1 Grievance if no response to that grievance is received." Doc. #33 at 2, ¶8. If plaintiff received no response to the purported June 20, 2019, Level-1 grievance he would therefore have been required to file an appeal within 65 days, that is, on or before August 24, 2019. Simms remained in DOC custody until September 6, 2019, but filed no such Level-2 appeal. Even if the Court construed the December 17, 2019, appeal as being intended to relate back to the purported June 20, 2019, grievance, the appeal would have been untimely.[5]

In sum, defendants have submitted evidence, including plaintiff's own testimony, conclusively establishing that plaintiff failed to exhaust his administrative remedies before

---

[5] The Second Circuit has confirmed that "individuals, like the plaintiff, who were incarcerated at the time that their claim accrued, were later released from prison, but did not file a lawsuit with respect to prison conditions until after they were again incarcerated[]" must exhaust administrative remedies as required by the PLRA. Gibson v. Brooks, 335 F. Supp. 2d 325, 330 (D. Conn. 2004) (citing Berry v. Kerik, 366 F.3d 85 (2d Cir. 2003)).

filing suit in this matter. Plaintiff has filed no evidence in response to the motion, and has not responded to the Statement of Material Facts, despite being provided multiple opportunities to do so. He has made no argument that the administrative remedies were unavailable to him, nor does the evidence of record suggest that any such argument would be tenable.

The undisputed evidence of record establishes that plaintiff failed to exhaust his administrative remedies as to his claim against Grady. Accordingly, summary judgment is **GRANTED** as to the sole remaining count of the Complaint.

IV.   <u>CONCLUSION</u>

For the reasons set forth herein, the Court finds that plaintiff has failed to produce evidence sufficient to support his claims, and that defendant's unrebutted evidence establishes that defendant is entitled to summary judgment on the sole remaining claim of the Complaint.

Judgment shall enter in favor of defendant Grady.

The Clerk shall close this case.

It is so ordered this 12th day of April, 2022, at New Haven, Connecticut.

     /s/                         
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
